IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BETSY TAUB,                              No    C-04-2316 VRW

    Plaintiff,                        ORDER

    v.

FLEISHMAN-HILLARD, INC et al,

    Defendants.

_____/

    Plaintiff Betsy Taub ("Taub") sued her employer, defendant Fleishman-Hillard, Inc, ("Fleishman-Hillard"), in California state court, alleging age discrimination under California's Fair Employment and Housing Act ("FEHA"), wrongful termination in violation of public policy and intentional infliction of emotional distress. Not of Rem (Doc #1), Ex A. Fleishman-Hillard then removed the case to federal court based on diversity jurisdiction. Id. Now before the court is Fleishman-Hillard's July 11, 2005, motion for summary judgment as to all of Taub's claims. Mot SJ (Doc #29). Taub has not opposed dismissal of the claim for intentional infliction of emotional distress. Opp SJ (Doc #35) at 25. For the reasons set forth below, Fleishman-Hillard's motion is GRANTED.

//

I

In 1996, Taub began working as a public relations associate at the Emeryville, California, office of UpStart Communications, Inc ("UpStart") when she was fifty years old. Taub Decl (Doc #37) at ¶¶ 1, 2. Taub's duties at UpStart were to provide public relations services to UpStart's technology-industry clients. Taub Depo (Doc#32-3) at 28:2-18, 39:3-16, 48:19-21.

In February 1999, Fleishman-Hillard acquired UpStart, at which time there were between forty-five and fifty UpStart employees. Id at 46:18-47:1; Taub Decl at ¶ 2. These employees, including Taub, appear to have stayed on to work at the Emeryville office, and Taub continued to perform the same job duties that she had performed at UpStart. Taub Depo at 43:11-14, 46:18-47:1.

Taub worked at the Emeryville office until December 2002, when Fleishman-Hillard transferred Taub and several other former UpStart employees to work in the technology group in its San Francisco office. Id at 42:20-43:2. By that time, Taub was one of only thirteen former UpStart employees still employed by Fleishman-Hillard. Id at 48:7-10. UpStart had focused exclusively on technology-industry clients, and consequently, the 2001 downturn in the technology industry had forced many former UpStart employees to leave Fleishman-Hillard. Id at 48:11-49:13. At the time of her transfer to the San Francisco office, Taub was spending all of her time working on two technology-industry client accounts: Novadigm and Wise Solutions. Id at 49:24-50:4.

In February 2003, Taub lost the Wise Solutions account because Wise Solutions took its public relations work in-house. Id at 163:4-9. Taub also informed management that she expected

1 Novadigm to cut back its budget.  Id at 73:10-73:24.  Although Taub
2 worked hard to find other accounts on which to work, her efforts
3 were unsuccessful.  Id at 163:21-164:1; Kundred Depo (Doc ##46-53)
4 at 125:14-24.

5      One of the Fleishman-Hillard employees that Taub
6 contacted in search of work was Nancy Morrison ("Morrison"), a
7 Senior Vice President in the technology group.  Morrison Depo (Doc
8 ##54-56) at 31:1-6.  Morrison held between one and two meetings per
9 week aimed at generating new business, and Taub attended one such
10 meeting concerning a prospective client.  Id at 24:21-26:3.
11 Although Morrison claims that she invited Taub to these meetings,
12 Morrison admits that Taub was not invited to all of them.  Id at
13 24:21-23; 25:19-26:10; Taub Decl at ¶ 5.  According to Morrison,
14 invitations to the meetings were based on whether the employee's
15 skill set best matched the prospective client.  Morrison Depo at
16 27:6-10.  Taub claims that she was frozen out of the meetings
17 because of her age.  Opp SJ at 5-8.

18      In April 2003, Curt Kundred ("Kundred"), the General
19 Manager in charge of San Francisco operations, proposed to his
20 boss, Bill Anderson, that Taub and two other former UpStart
21 employees should be fired.  Doc #32-5 at 4:7-17; 131:7-16.  On
22 April 28, Barbara Axmacher ("Axmacher," at that time Barbara
23 Ruberg), a member of the Talent Development Department in
24 Fleishman-Hillard's St Louis office, emailed Anderson stating that
25 she had spoken to Kundred and that Taub and two others were to be
26 let go on April 30.  Ackerman Decl (Doc #41), Ex G.  The email
27 stated, "All three [employees] are over the age of 40 but we feel
28 confident these are the people we need to let go at this time."

3

Id. Management ultimately decided against terminating Taub, however, because of concerns that too many UpStart employees were being let go. Doc #32-5 at 129:1-4.

In July and August of 2003, Novadigm cut back its public relations budget. Taub Depo at 163:4-20; 164:12-18. Taub continued to contact others in the office about her need for work but was unable to obtain any other significant assignments. Id at 164:19-165:3. Because Wise Solutions was no longer a client and Novadigm had cutback its budget, Taub did not meet her billable hours goals in July and August of 2003. Id at 164:7-18. After discussions with Taub's supervisors, Kundred decided to terminate Taub. Kundred Decl (Doc #32-1) at ¶ 5. Noting in an August 22, 2003, email that Taub was not "deployable to life sciences or other groups," Axmacher relayed Kundred's desire to terminate Taub and one other employee in the technology group to Agnes Giaconda, head of the Talent Development Department. The email stated: "Betsy [Taub], who is over 60, has been cut back from accounts she was working and was removed from previous layoff lists because we felt there was too much focus on letting former UpStart people go. Neither [employee] is working on much else and based on their skill sets, there is no other work for them." Kundred Depo.

On August 27, 2003, Fleishman-Hillard posted on hotjobs.com an advertisement for an Account Supervisor, a position that was one level below Taub's position. Taub Decl, Ex B. On September 3, 2003, Taub, who was fifty-seven years old, and the other employee, who was twenty-eight years old, were terminated. Taub Decl at ¶ 1; Kundred Decl at ¶¶ 5-6.

//

**4**

**II**

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v Liberty Lobby</u>, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists. <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id at 249.

//
//

### III

FEHA prohibits the discharge of an employee because of the employee's age. Cal Gov Code § 12940(a). Because of the similarity between FEHA and federal employment discrimination statutes, California courts look to pertinent federal precedent in applying FEHA. Guz v Bechtel National, Inc, 24 Cal 4th 317, 354 (2000). In particular, in employment discrimination cases that rely entirely on circumstantial evidence, California courts apply the three-stage burden shifting test the United States Supreme Court established in McDonnell Douglas Corporation v Green, 411 US 792 (1973), and subsequent cases. Guz, 24 Cal 4th at 354.

Under the test, a plaintiff must first establish a prima facie case by presenting evidence sufficient to give rise to an inference of age discrimination. Id at 354-56. This creates a presumption of age discrimination and shifts the burden to the employer to produce evidence of a non-discriminatory reason for its employment decision. Id. If the employer meets this burden, the presumption created by the prima facie case disappears and the employee must then show that the employer's proffered reason is a pretext for age discrimination. Id.

Fleishman-Hillard makes two arguments to support its motion for summary judgment. First, Fleishman-Hillard contends that Taub has not established a prima facie case of discrimination because she has not produced evidence that her discharge occurred under circumstances giving rise to an inference of age discrimination. Mot SJ at 10-12. Second, Fleishman-Hillard claims that even if Taub could establish a prima facie case, Taub has not presented any evidence that Fleishman-Hillard's justification for

terminating her was pretextual. Id at 17-22. The court will examine each of these claims in turn.

A

The degree of proof necessary to establish a prima facie case on summary judgment is "minimal," and "does not even need to rise to the level of a preponderance of the evidence." Wallis v JR Simplot Co, 26 F3d 885, 889 (9th Cir 1994). To establish a prima facie case, a plaintiff must show that she was: (1) over age forty; (2) performing her job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications. Rose v Wells Fargo & Company, 902 F2d 1417, 1421 (9th Cir 1990).

Taub has presented evidence that she was over forty years old and was discharged, thus establishing elements one and three of a prima facie case. She has also produced some evidence of the second element, satisfactory performance. For instance, Morrison testified that Taub's performance did not warrant a performance improvement plan. Morrison Depo at 45:8-12. And Kundred states that Taub "was not terminated because of 'poor performance.'" Kundred Supp Decl (Doc #58) at ¶ 7. Nonetheless, a May 2003 evaluation stated that Taub should "[l]earn to better manage her time on Novadigm so she can take on additional accounts." Doc #32-2. This suggests that Taub's inability to secure new work may stem from her inefficient efforts elsewhere.

The review contained a number of other criticisms of Taub's performance (e g, Taub "isolates herself in her office" inadequately "interact[ing] with the rest of the San Francisco office," "inappropriately reached out to Claudia Carasso about

7

Claudia returning to the agency," "needs to spend more time with her supervisor and peers to resolve what she doesn't understand," "needs to learn how to achieve goals from the client during the normal business day," needs to "demonstrate[] the same or comparable capabilities of other managing supervisors in the San Francisco office"). Id at 11-12. This review covered the period up to May 2003, two months before Novadigm cut back its public relations budget and Taub failed to meet her billable hours goals. This record fails to establish the satisfactory performance prong of Taub's prima facie case.

But even if the court assumes for purposes of this motion that Taub performed her job in a satisfactory manner, she has not shown that she was replaced by a younger worker. Although Fleishman-Hillard posted an advertisement for an Account Supervisor on hotjobs.com seven days before Taub was terminated, Taub conceded that the Account Supervisor position was one level below Taub's position of Managing Supervisor and that an Account Supervisor could only handle thirty percent of Taub's Novadigm work. Taub Decl, Ex B; Taub Depo at 234:12-23. And although Fleishman-Hillard hired a Senior Account Executive in the technology group less than a month after Taub was terminated, that position was two levels below Taub. Ackerman Decl, Ex D; Kundred Depo at 50:1-16. Presumably, an employee in that position could handle only a fraction of Taub's duties.

The fourth element of a prima facie case -- replacement by a younger worker -- is not required in every case. In cases in which the termination was part of a reduction in workforce, the employee may satisfy the replacement prong by showing "through

8

circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." Rose, 902 F2d at 1421.  The employee can establish this inference by showing either that the employer had a continuing need for the employee's services because the employee's duties were still being performed, or by showing that others not in the protected class were treated more favorably.  Nidds v Schindler, 113 F3d 912, 917 (9th Cir 1996).

Failure to show replacement by a younger worker is not alone fatal to Taub's case because the evidence shows that her termination was part of a reduction in workforce.  Fleishman-Hillard has cited losses in its technology practice in the middle of 2003 and its inability to "sustain the level of existing employees" as a contributing factor in Taub's termination.  See, e g, Kundred Decl at ¶ 3.  Taub may therefore satisfy the fourth requirement of a prima facie case by showing either a continuing need for her services or by showing that younger employees were treated more favorably than she was treated.

To satisfy this requirement, Taub argues that younger workers were treated more favorably than she and points to:  (1) the hotjobs.com advertisement discussed above; (2) evidence that Nancy Morrison excluded Taub but invited younger workers to meetings; and (3) an email from Kundred suggesting that Andrew Miller, in his thirties, be used for a new project instead of Taub. Opp SJ at 21.  Even though the evidence required at the prima facie stage is minimal, the court finds that the evidence Taub has presented fails to demonstrate that Taub's discharge occurred under circumstances giving rise to an inference of age discrimination.

**9**

Because the hotjobs.com advertisement was for a position that differed significantly from Taub's and because Taub has not established that a younger account supervisor was actually hired, the advertisement shows neither a continuing need for her duties nor that younger workers were treated more favorably.

The evidence that Nancy Morrison excluded Taub but invited younger workers to meetings does not support a possible inference that younger workers were treated more favorably. According to Morrison's testimony, she held between one and two meetings per week aimed at developing new business in the technology group. Morrison did not invite Taub to some of these meetings, even though she knew that Taub was looking for work. The problem (for Taub) is that she has not presented evidence of who was invited to the meetings, the age of employees who were invited, how many meetings the employees were invited to in comparison to Taub, their qualifications in comparison to Taub's and that Taub had the qualifications or contacts to contribute to the objectives of Morrison's meetings. Furthermore, Taub testified that she knows of no other facts that would support a contention that Morrison excluded Taub because of her age. Taub Depo at 349:12-350:2. This sequence of events and circumstances simply is insufficient to give rise to an inference of discrimination. See <u>Ritter v Hughes Aircraft Co</u>, 58 F3d 454, 457 (9th Cir 1995) (holding that an employee who lacked specific evidence of the identity, age or inferior qualifications of his replacement failed to establish a prima facie case of age discrimination).

Taub's reference to an email from Kundred to Michael Busselen, General Manager of Fleishman-Hillard's San Diego office,

10

also is unavailing. Busselen had contacted the San Francisco office to find an employee to work on a new project. Doc #53. In response, Shawn Dainas, a vice president at that office, suggested Taub. Id. When Busselen contacted Kundred about Dainas' suggestion, Kundred said "Do not use Betsy." Id. Kundred suggested assigning the project to Andrew Miller, who was in his thirties. Id. Despite Kundred's suggestion of a younger employee, this email does not itself allow the inference of age discrimination because Busselen specifically stated that he did not want to use Taub if she might be terminated in the next sixty days. Id. He sent this email to Kundred less than two weeks before Taub was terminated, and Kundred testified that he said not to use Taub because he had essentially already made the decision to terminate her. Kundred Depo at 155:1-10.

B

But putting this all aside, even if Taub had established a prima facie case, Fleishman-Hillard has satisfied its burden of production by articulating legitimate and nondiscriminatory reasons for Taub's termination. Fleishman-Hillard claims that the amount of work available was insufficient to sustain the number of employees in the technology group. Mot SJ at 12-17. Fleishman-Hillard also asserts that it selected Taub for termination because she did not have enough work, she lacked the skills required to obtain new work and her performance was deficient. Id.

Indeed, Fleishman-Hillard has produced evidence that when Taub was terminated, Novadigm, Taub's only client, had cut back its hours such that Taub did not reach her billable hours goals for July and August 2003. Taub herself acknowledged that

11

insufficient billable hours would leave an employee vulnerable to termination. Doc #58-2 at 286:15-287:6. In addition, Kundred testified that he believed Taub did not have the skills necessary to work on a broad range of clients, an assertion that Axmacher referenced in her emails. Doc #58-6 at 137:2-23. That Fleishman-Hillard terminated a twenty-eight-year-old employee who was also thought to lack the desired "skill set" supports this assertion.

There is also evidence that Taub's performance was deficient in certain areas. Fleishman-Hillard has argued that Taub's performance was one of the reasons that she was unable to obtain work. Mot SJ at 13-17. As previously, the May 2003 evaluation Taub received suggested a need for improvement in several areas, including a need to improve her "strategic execution," a need to become less isolated in the office and a need to improve communication with her clients. Doc #32-2. Kundred states that he did not take this evaluation into account when terminating Taub, but that he did consider her "visibility, her insularity, [and] her need to think more strategically, all of which Ms. Taub conceded were true in our meetings in June 2003 and that happened to appear in that evaluation." Kundred Supp Decl at ¶ 7. Moreover, as noted, this (at best) mixed performance review preceded Taub's failure to meet her billable hours goals in July and August 2003 after the Novadigm cutbacks.

C

Because Fleishman-Hillard has articulated nondiscriminatory reasons for terminating Taub, she must produce evidence sufficient to allow a reasonable jury to conclude either that Fleishman-Hillard's reasons for terminating her are false or

12

1 that age discrimination was the true reason for her discharge.
2 Nidds, 113 F3d at 918.  This evidence must be "specific" and
3 "substantial."  Wallis, 26 F3d at 890.

4       Taub contends both that Fleishman-Hillard's reasons for
5 terminating her are false and that the true reason for her
6 termination was age discrimination.  Taub argues that Fleishman-
7 Hillard did not terminate her for economic reasons because the
8 evidence shows that the San Francisco office was profitable in 2002
9 and 2003.  Opp SJ at 11-12.  She also argues that her work
10 experience shows that she had the skill set required to service a
11 broad range of clients.  Id at 3-4.  Taub further contends that
12 emails mentioning her age in connection with her termination
13 demonstrate that age discrimination was the true reason for her
14 termination.  Id at 23.  Finally, Taub has presented statistical
15 evidence that, in her view, shows that Fleishman-Hillard
16 discriminated against older employees.  Ackerman Decl, Ex E; Opp SJ
17 at 4.  After reviewing the evidence on these issues, the court
18 finds that Taub has failed to produce specific and substantial
19 evidence of pretext.

20       Taub argues that Fleishman-Hillard did not terminate her
21 for economic reasons because the San Francisco office was
22 profitable in 2002 and 2003.  But Taub's evidence on this point
23 does not address Fleishman-Hillard's stated reason for terminating
24 her.  Kundred stated that profitability concerns in the technology
25 practice meant that the technology group could not sustain the
26 number of existing employees.  Although the technology practice did
27 make a profit in 2003, financial records show that the practice
28 experienced losses in five of the last six months of calendar year

13

2003, thus supporting Kundred's statement.  Ackerman Decl, Ex F. And Taub has not pointed to any evidence suggesting that the technology practice did not have "profitability concerns" in 2003. Rather, Taub argues that Fleishman-Hillard did not terminate her for economic reasons because the San Francisco office as a whole was profitable, an assertion that Fleishman-Hillard does not contest.  Because this evidence is not inconsistent with Kundred's stated reason, it does not show pretext.

Taub also argues that Fleishman-Hillard's statement that she lacks the skills to work with a broad range of clients is false.  Taub points to her employment history, which shows that she has experience working for eleven different clients.  Opp SJ at 2-4.  Taub also points to the email from Shawn Dainas to the general manager of the San Diego office in which Dainas suggested Taub as a candidate for a new assignment and detailed her experience working with various clients and reporters.  Doc #53.  Finally, Taub argues that Fleishman-Hillard has not specified what skills Taub was lacking.  Opp SJ at 23.

The evidence on this point does not create a genuine issue of material fact as to pretext.  Although Kundred did not specify what skills Taub lacked, he stated that he had learned from managers who had worked with Taub that she was not readily deployable to a broad range of work.  Doc #32-5 at 137:2-138:14. Kundred also stated that Taub had limited experience working with a broad range of clients as compared to other members of the technology practice.  Kundred Decl at ¶ 5.  Because Taub has not pointed to any evidence that she was equally or better qualified to work with a broad range of clients than those employees who were

14

1 retained, Taub has not pointed to any evidence that Fleishman-
2 Hillard's statements regarding her skills are false.

3       Next, Taub argues that two emails connected to her
4 termination that mention her age show that discrimination was the
5 true reason for firing her.  The August 22 email from Barbara
6 Axmacher described Taub as "over sixty."  Kundred Depo.  A
7 reference to age, however, without any indication of favoritism for
8 younger workers or animus against older workers cannot support an
9 inference of discrimination.  See Nelson v J C Penney, 75 F3d 343,
10 346 (8th Cir 1996) ("A fact finder may not simply convert a
11 condition that is necessary for a finding of liability (here,
12 knowledge of a plaintiff's age) into one that is sufficient for
13 such a finding.").  Furthermore, Axmacher explains that she only
14 brought up Taub's age because of risk management and severance
15 concerns.  Doc #32 at ¶ 5.  The April 28 email confirms this
16 assertion:  In referring to Taub and two other employees who had
17 been proposed for termination, the email states, "All three are
18 over the age of 40 but we feel confident these are the people we
19 need to let go at this time."  Id, Ex G.  But Taub was not let go
20 at this time suggesting, if anything, that mention of age may have
21 led to Taub's retention.  Axmacher's use of the word "but"
22 indicates a reluctance to lay off employees who are in the
23 protected age group.  The mere mention of age is simply too
24 attenuated to support a triable issue of pretext.

25       Finally, statistical evidence that Taub has presented is
26 not probative in showing age discrimination.  According to Taub,
27 employment records show that at the time of Taub's termination
28 there were "significantly higher number of UpStart employees over

15

age 40, in comparison to the employees of Fleishman-Hillard," that Taub was the oldest employee in the San Francisco office at the time she was terminated and that there was not an employee in a similar position to Taub over age 40.  Id, Ex E; Opp SJ at 4. Because these statistics fail to take into account any variables besides age, job title, and office, however, they are not probative.  For instance, Taub began working as a public relations associate at age fifty.  If the average age of applicants for that position is much lower, then that factor, rather than age discrimination, would account for the difference in ages between Taub and her co-workers.  See <u>Pottenger v Potlatch</u>, 329 F3d 740, 748 (9th Cir 2003) (where statistics used to prove age discrimination failed to take into account job performance, they failed to raise a triable issue of fact regarding pretext).

  Hence, Taub has not produced specific and substantial evidence that creates an issue of material fact as to the truth of Fleishman-Hillard's legitimate explanation for firing Taub. Fleishman-Hillard is therefore entitled to summary judgment as to Taub's FEHA age discrimination claim.

D

  Taub has also brought a claim for wrongful discharge in violation of public policy.  Taub bases this claim on FEHA's expression of the public policy against age discrimination.  Not of Rem, Ex A at ¶¶ 25-26.

  According to the California supreme court, "the public policy against age discrimination articulated in the FEHA is subject to the FEHA's limitations on the nature and scope of the statutory prohibition against age discrimination."  <u>Esberg v Union</u>

Oil Co, 28 Cal 4th 262, 272 (2002). If an employer has not violated FEHA, the employee's claim for wrongful discharge in violation of public policy based on FEHA fails. Id at 272-73. Because Taub has not established a violation of FEHA, Fleishman-Hillard is also entitled to summary judgment as to Taub's claim for wrongful termination in violation of public policy.

IV

In sum, the court GRANTS Fleishman-Hillard's motion for summary judgment on the grounds that Taub has failed to present evidence establishing a prima facie case of age discrimination and that Taub has failed to present specific and substantial evidence that Fleishman-Hillard's legitimate, nondiscriminatory reasons for her termination are pretextual. Because Taub has not established a genuine issue of material fact whether defendant violated FEHA, Fleishman-Hillard is also entitled to summary judgment as to plaintiff's claim of wrongful termination in violation of public policy. Taub's claims of age discrimination under FEHA, wrongful termination in violation of public policy and intentional infliction of emotional distress are DISMISSED. The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge